UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                              Chapter 12 Case

Dennis LeMon                                 Case No. 21-30557
            Debtor.

**MODIFIED CHAPTER 12 PLAN**

## ARTICLE I
SUMMARY OF THE PLAN

This plan shall continue for a period of 36 months from its effective date. The property of the Debtor is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Costs of administration are being paid on the effective date of the plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The Debtor will pay the Trustee no less than all disposable income, as that term is defined in 11 U.S. C. Section 1225, for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

## ARTICLE II
DEFINITIONS

1. "Creditors" means all entities having a claim against the debtor.
2. "Secured Creditor" means a creditor with a lien or security interest in property of the debtor.
3. "Claim" means a debt that is owed by the Debtor.
4. "Effective Date" means the date on which this plan is signed by all relevant parties.
5. "Trustee" means the Chapter 12 Trustee.

## ARTICLE III
CLASSIFICATION OF CLAIMS

CLASS 1       Costs of Administration

CLASS 2       Secured Claims

    A. Frandsen Bank & Trust – Real Property

    B. PNC Bank – Real Property

    C. John Deere – Equipment

1

D. Farm Service Agency - Blanket

CLASS 3    Priority Unsecured Claims

CLASS 4    General Unsecured Claims

CLASS 5    Executory Contracts and Leases

## **ARTICLE IV**
TREATMENT OF CLAIMS AND INTEREST

CLASS 1 - Costs of Administration

Class 1 includes compensation and expenses of professionals and court costs and all expenses incurred by the Debtor after the filing of their petition and before the entry of the order of confirmation and expenses of professionals and court costs, shall be paid in full on the effective date of the plan. Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court.

A. Attorney's Fees – Attorney's Fees will be paid after court approval to Debtor's attorneys, Stermer & Sellner, Chtd., 102 Parkway Drive, P.O. Box 514, Montevideo, MN 56265.

B. Trustee's Fees - The Chapter 12 Trustee shall make application to the Court for approval of Trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The Debtor shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein**. **Creditors shall only accept direct payments from the debtor if specified in the Plan.**

CLASS 2 – Secured Claims

Class 1 consists of the following secured claims:

   **A. Frandsen Bank & Trust**

Debtors owe Frandsen Bank & Trust (FBT) approximately $626,719.42, which is secured by the Debtor's real property.  Debtor scheduled his real estate with a value of $909,400 (not including the PNC Bank debt).  The FBT debt shall be secured by the same collateral until such time that said debt has been repaid in full.  FBT may be entitled to pre- and post-petition confirmation interest, attorneys' fees, costs,

disbursements and other charges, under 11 U.S.C. 506(b). The parties may stipulate to those amounts, or FBT may move the Bankruptcy Court for approval and allowance of them, at reasonable times and intervals

Interest will accrue on this the new principal balance at a rate of 4.75% per annum. Principal and interest will be amortized for a 30-year term. This loan shall balloon in 5 years. Payments shall be $40,000.00 per year, with the first payment due by January 31, 2023. Principal and interest will be fully amortized by way of equal payments, with the exception of the final payment. Debtors may prepay the claims in whole or in part at any time.

If the Debtor defaults under this plan with respect to treatment for the secured claim of FBT and such default is not cured within 30 days from the date written notice of the same is provided by FBT to the Debtor, FBT may submit an Affidavit of Default to the United States Bankruptcy Court for the District of Minnesota, with the Court thereafter in its discretion may enter and order that grants FBT relief from the automatic stay and permits FBT to foreclose against, recover and liquidate any real property collateral.

**B. PNC Bank**

The Debtor owes PNC Bank, National Association, N.A. approximately $50,416.63, which is secured by Debtor's homestead. Debtor scheduled the homestead real estate with a value of $120,900.00. Debtor will continue to make payments pursuant to the original loan agreement with PNC Bank outside of the plan.

**E. John Deere**

The Debtor owes Deere & Company d/b/a John Deere Financial approximately $12,331.08, which is secured by a combine. Debtor believes the value of the combine is approximately $16,000.00. Debtor will continue to make payments pursuant to the original loan agreement with John Deere outside of the plan.

**E. Farm Service Agency**

The Debtors owes Farm Service Agency ("FSA") approximately $41,325.91. FSA has a blanket lien on Debtor's personal farm property, including but not limited to, farm products, accounts, general intangibles, machinery, equipment, government agricultural program payments, inventory, chattel paper and proceeds. FSA also has a mortgage against Debtors' real property. The FSA debt shall be secured by the same collateral until such time that said debt has been repaid in full. Debtor will continue to make payments pursuant to the original loan agreement with FSA outside of the plan.

CLASS 3 – Priority Unsecured Claims
Class 3 consists of all claims entitled to priority under § 507, including the following:

A. Internal Revenue Service: $4,624.51 – Will be paid in full pursuant to class 4. The IRS shall be allowed to amend it's claim to include any additional tax liabilities incurred by the Debtor during the course of the plan.
B. Minnesota Department of Revenue: $2,570.11 – Will be paid in full pursuant to class 4. The Minnesota Department of Revenue shall be allowed to amend it's claim to include any additional tax liabilities incurred by the Debtor during the course of the plan.

CLASS 4 – Unsecured Claims

Class 4 consists of general unsecured claims, claims of all unsecured creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, claims resulting from the value of a secured claim being of a value less than the security held against held claim, and/or those secured creditors whose claims are determined to be unsecured, claims of all accommodation parties and co-makers or loans of which the Debtor is the principal, and claims for taxes and penalties which are not included in any other Class. Any priority claims shall be paid prior to payment of non-priority, general unsecured claims. Payments made to the non-priority unsecured creditors shall be disbursed by the Trustee pro-rata based on the amount of filed and allowed claims existing on the date of disbursement.

Debtors will pay allowed unsecured claims, in the total approximate amount of $50,656.95, over the three-year term of the plan, with an interest rate of 3.25%. The Debtors shall pay the unsecured creditors at least an amount equal to the amount required in the liquidation analysis set forth in Exhibit A. Debtor's anticipate that all unsecured creditors will be paid in full. Debtors' shall pay Trustee $65,000.00 per year over the course of the plan for a total amount of $195,000.00. Payments shall be made by December 31 of each year or earlier.

| 2022 Total Payment to Trustee | $65,000.00 |
| --- | --- |
|  |  |
| Trustee Fees | $3,250.00 |
| Debtor Attorney | $3,750.00 |
| Frandsen Bank & Trust | $40,000.00 |
| Unsecured Creditors | $18,000.00 |

| 2023 Total Payment to Trustee | $65,000.00 |
| --- | --- |
|  |  |
| Trustee Fees | $3,250.00 |
| Debtor Attorney | $3,750.00 |
| Frandsen Bank & Trust | $40,000.00 |
| Unsecured Creditors | $18,000.00 |

| 2024 Total Payment to Trustee | $65,000.00 |
|---|---|
|  |  |
| Trustee Fees | $3,000.00 |
| Debtor Attorney | $3,000.00 |
| Frandsen Bank & Trust | $40,000.00 |
| Unsecured Creditors | $18,000.00 |

CLASS 5 – Executory Contracts and Leases

Class 5 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this section. The debtor assumes the following executory contracts and leases:

A. Anthony Watson – 7 acres for $560.00

B. Arlie Hagman – 35 acres for $2,790.00

C. Butch Willert – 10 acres for $1,100.00

D. Connie Davis - 28 acres for $1,560.00

E. Dave Anderson - 20 acres for $1,600.00

F. Dave Gravelle – 89 acres for $7,200.00

G. Denny Wood – 20 acres for $1,600.00

H. Don Scott – 13 acres for $700.00

I. Doug Stanger – 29 acres for $2,400.00

J. Emily Frandseen – 185 acres for $19,425.00

K. Kelly Huckenson – 41 acres for $2,400.00

L. Loring Nelson – 90 acres for $8,100.00

M. Maureen Sheridan – 18 acres for $1,400.00

N. Percy Taylor – 26 acres for $2,600.00

O. Ray Schwagert – 52 acres for $4,000.00

P. Rene & Coleen Brackenberry – 22 acres for $1,365.00

Q. Smith Estate – 63 acres for $3,500.00

R. Travis Haugerd – 33 acres for $3,500.00

S. Victor Johnson – 8 acres for $800.00

T. USDA Farm Service Agency Istanti/Chisago County – 2019 WHIP+ Contract for potential crop loss

**ARTICLE V**
CONTINUATION OF FARMING OPERATION

The Debtor propose to continue their farm operation on a smaller scale and liquidate some of their

property. Debtor shall defer from the income and proceeds of said operation sums of money for reasonable and necessary farm expenditures. Such expenses would include the ordinary, reasonable expenses that are set forth in the exhibits attached hereto, including payments to creditors outside of the plan and reasonable capital improvements, including machinery, equipment, and livestock. Debtor's projections of income, operating expenses, and payments are attached as Exhibit B.

The However, it is understood that any significant purchases that require new debt to be incurred will need court approval. As part of the continuing farm operation, Debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. All disposable income as defined by 11 U.S.C § 1225(b)(2) received during the term of the plan will be applied to make payments under the plan.

## ARTICLE VI
### LIVING EXPENSES

Debtors projection of living expenses is $40,000 per year starting in 2021. Debtor's living expenses will primarily be paid by Debtors' off-farm income. The Debtor shall limit their annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## ARTICLE VII
### DISPOSABLE INCOME

The Debtors' projections of gross income, operating expenses, living expenses and plan payments indicate that he may have disposable income annually in the approximate amount of **$48,151.00**. For the term of this Plan, all of the Debtor's disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration and distribution to unsecured creditors. All disposable income according the charts above (future earnings not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the Debtor and his dependents) for 3 years following the effective date, shall be submitted to the Trustee for distribution in accordance with to unsecured creditors . All creditors with Class 4 – General Unsecured Claims shall be paid a pro rata share of disposable income after administrative and priority claims have been paid.

## ARTICLE VIII
### LIQUIDATION ANALYSIS

After deducting the amounts of the secured claims, exemptions, liquidation costs the Debtors' believe net equity in their property is $58,813.50. The priority unsecured class (but not including attorney's fees

and Trustee's fees) and non-priority unsecured class of claims shall receive, in total, a minimum distribution of $58,813.50 or payment in full of allowed claims, whichever is less. The Liquidation Analysis is attached as Exhibit A.

## ARTICLE IX
### POST-PETITION GOVERNMENT TAX CLAIMS

Pursuant to 11 U.S.C. §1232(a), the claims of the IRS and the Minnesota Department of Revenue arising after the filing of the petition in this case and prior to the discharge as a result of the sale, transfer, exchange, or other disposition of property used in Debtor's farming operation shall be discharged and treated as unsecured claims arising before the date of filing and are not entitled to priority, i.e. part of Class 4. If the Debtor files a tax return for a period for which such a claim arises, the Debtor shall prepare and service a notice of the claim on the IRS and the Minnesota Department of Revenue in accordance with 11 U.S.C. § 1232(d)(2) and to the extent that the IRS, Minnesota Department of Revenue, or the trustee timely files a proof of claim pursuant to 11 U.S.C. § 1232(d)(3), the trustee shall pay the IRS and the Minnesota Department of Revenue as general unsecured creditors.

## ARTICLE X
### EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue their farming operations and make the plan payments out of farm or other income. The debtor's projection of income, operating expenses, and plan payments are attached as Exhibit B.

## ARTICLE XI
### RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this Plan shall retain his liens on the collateral securing their respective claims as specified in the Plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this Plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference as if more fully set out in this plan. This Plan and the Order confirming the Plan may be recorded in the Office of the Register of Deeds of each county.

## ARTICLE XI
### GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the Debtor and his property for the term of the Plan.
2. As part of the continuing farm operation, the Debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The Debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

Dated: September 8, 2021          STERMER & SELLNER, CHTD.

                                  *Krystal M Lynne*
                                  Krystal M. Lynne  Atty ID #0392816
                                  Attorney for Debtor
                                  102 Parkway Drive, P.O. Box 514
                                  Montevideo, MN 56265
                                  Telephone: (320) 269-6491
                                  E-mail: klynne@stermerlaw.com

Dated: September 8, 2021          *Dennis LeMon signature*

                                  Dennis LeMon

# EXHIBT A
# LIQUIDATION ANALYSIS

## DENNIS LEMON

| Asset | Value | Lien | 2nd Lien | Exemption | NE Value |
|---|---|---|---|---|---|
| Real Property | | | | | |
| Property ID 06.00031.00* | $120,900.00 | PNC - $51,000.00 | | $120,900.00 | $0.00 |
| Property ID 06.00046.00 | $201,200.00 | FBT - $201,200.00 | | | $0.00 |
| Property ID | $120,200.00 | FBT - $120,200.00 | | | $0.00 |
| Property ID 06.00030.00* | $70,200.00 | | | $70,200.00 | $0.00 |
| Property ID 06.00021.00 | $299,900.00 | FBT - $215,000.00 | | $299,900.00 | $0.00 |
| Property ID 06.00005.00 | $97,000.00 | FBT - $97,000.00 | | | $0.00 |
| Chattel | | | | | |
| Equipment/Machinery | $100,300.00 | JD - $13,000.00 | FSA - $40,000.00 | | $47,300.00 |
| Vehicles | | | | | |
| 1997 Chevy Silverado | $2,500.00 | | | $2,500.00 | $0.00 |
| 2004 Mercury Grand Marquis | $750.00 | | | | $750.00 |
| HH Gooseneck Trailer | $1,000.00 | | | | $1,000.00 |
| 1997 Chevy 3500 | $2,100.00 | | | $2,100.00 | $0.00 |
| Household/Misc. | | | | | |
| Household Goods | $2,500.00 | | | $2,500.00 | $0.00 |
| Electronics | $500.00 | | | $500.00 | $0.00 |
| Books and DVDS | $150.00 | | | | $150.00 |
| Guns | $2,100.00 | | | | $2,100.00 |
| Misc. Clothing | $300.00 | | | $300.00 | $0.00 |
| Jewelry | $700.00 | | | $700.00 | $0.00 |
| Cash | $100.00 | | | $100.00 | $100.00 |
| FBT Checking xxx2926 | $4,495.00 | | | $3,370.00 | $1,125.00 |
| Thrivent | $1,500.00 | | | $1,500.00 | $0.00 |
| FSA WHIP | $12,500.00 | | | | $12,500.00 |
| PPP | $25,000.00 | | | | $0.00 |
| Life Insurance | $0.00 | | | | $0.00 |
| Office Supplies | $200.00 | | | $200.00 | $0.00 |
| 17 Round Bales | $1,500.00 | | | $1,500.00 | $0.00 |
| Shop tools, compressor, etc. | $2,500.00 | | | $2,500.00 | $0.00 |
| Supplies | $13,040.00 | | | $6,150.00 | $6,890.00 |
| Lawn Mower | $600.00 | | | | $600.00 |
| Fish House | $500.00 | | | | $500.00 |
| 2002 Arctic Cat ATV | $750.00 | | | $750.00 | $0.00 |
| | | | | | |
| **Total NE Assets** | | | | | **$73,015.00** |
| Liquidation | | | | | |
| Chapter 7 Trustee Fees | $6,900.00 | | | | |
| Liquidation Costs (10%) | $7,301.50 | | | | |
| | | | | | |
| Liquidation Analysis | | | | | **$58,813.50** |

*These properties are also secured by Frandsen Bank & Trust, but the bank total debt is already covered by other collateral.

# EXHIBIT B
## CASH FLOW ANALYSIS

**Projected Income**

|  | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|
| Income Source |  |  |  |  |
| Crops | $315,000.00 | $315,000.00 | $315,000.00 | $315,000.00 |
| Land Rent |  |  |  |  |
| Custom Work |  |  |  |  |
| Gov. Payments | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Non-farm Income |  |  |  |  |
| K/D Payments |  |  |  |  |
| Total Est. | $320,000.00 | $320,000.00 | $320,000.00 | $320,00.00 |

**Estimated Expenses**

| Expense | Amount |  |  |  |
|---|---|---|---|---|
|  | 2022 | 2023 | 2024 | 2025 |
| Fuel | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Seed | $33,291.00 | $33,291.00 | $33,291.00 | $33,291.00 |
| Feed | $0.00 | $0.00 | $0.00 | $0.00 |
| Fertilizer | $34,928.00 | $34,928.00 | $34,928.00 | $34,928.00 |
| Chemicals | $29,135.00 | $29,135.00 | $29,135.00 | $29,135.00 |
| Equipment Rental | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Electric & Phone Bills | $2,700.00 | $2,700.00 | $2,700.00 | $2,700.00 |
| Repairs | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Crop Insurance | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 |
| Other Insurance | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Real Estate Taxes | $4,210.00 | $4,210.00 | $4,210.00 | $4,210.00 |
| Cash Rent | $59,885.00 | $59,885.00 | $59,885.00 | $59,885.00 |
| Hired Labor | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Machine Hire | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| Drying | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 |
| Misc. | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
|  |  |  |  |  |
| Total Est. Expenses | $201,649.00 | $201,649.00 | $201,649.00 | $201,649.00 |
|  |  |  |  |  |
| PNC Loan | $13,800.00 | $13,800.00 | $13,800.00 | $13,800.00 |
| John Deere Loan | $6,400.00 | $6,400.00 |  |  |
| FBT Loan | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 |
|  |  |  |  |  |
| Est. Living Expenses | $40,000.00 | $40,000.00 | $40,000.00 | $40,000.00 |
|  |  |  |  |  |
| Net Disposable Income | $18,151.00 | $18,151.00 | $24,551.00 | $24,551.00 |